OPINION
Defendant-Appellant Lisa Thomas ("Thomas") appeals the decision of the trial court finding her in contempt for failure to allow court-ordered visitation between Plaintiff-Appellee, Gary DePew ("DePew") and their daughter, Staci. This issue arose as a result of a motion by DePew to show cause why Thomas should not be held in contempt, and a motion filed by Thomas to terminate or in the alternative establish supervised visitation. In October of 1998, the parties reached an agreement as to an interim visitation schedule wherein initially DePew was allowed two hours of supervised visitation per week for four weeks.
When this visitation did not occur, the matter was brought before Magistrate Horne of the Juvenile Division on February 16, 1998. At this hearing, the parties agreed to four counseling sessions between DePew, Staci and her therapist, Dr. Rudisill. The parties agreed to hold their motions in abeyance pending the outcome of these sessions and the opinion of the therapist. Two of the sessions with Dr. Rudisill occurred on March 2 and March 16, 1999 with both DePew and Staci present.
The matter was again heard before Magistrate Horne on March 29, 1999 regarding the motions filed by the parties. At the February 16 and the March 29 hearings, testimony was taken regarding Dr. Rudisill's sessions with Staci and her father, and the visits scheduled pursuant to the interim order, which did not occur. Dr. Rudisill testified that she had been treating Staci occasionally for approximately a year. Staci had expressed to Dr. Rudisill that she feared her father and did not want to visit with him. During the sessions in which both Staci and DePew were present, Staci revealed some of the reasons she feared her father. These reasons included incidents Staci had heard about from others, such as her father cutting his sister's arm, driving his truck around with a gun, and punching a hole in the wall in a fit of anger. Also, Staci said she witnessed her father kicking his dog and smoking marijuana, and also accompanied him to purchase marijuana. Staci told Dr. Rudisill that her father screams a lot and has threatened to kidnap her. In response, DePew denied all of these allegations.
Throughout these sessions, Dr. Rudisill testified that DePew exhibited hostile and paranoid behavior. Several times he attempted to engage Staci in conversation, but to no avail. Dr. Rudisill related that Staci rarely made eye contact with her father and only occasionally would respond curtly to his questions and statements. Further, Staci stated directly to her father that she did not want to visit with him. When leaving the first session, Dr. Rudisill testified that DePew began yelling at Thomas in the waiting room in front of Staci.
During the second session on March 16, 1999, Dr. Rudisill testified that DePew seemed even more agitated and paranoid than the first session. He repeatedly told Staci that he loved her and stated several times that he would be with his daughter "no matter what." Dr. Rudisill testified that he made this statement in a very threatening tone. Finally, after about ten minutes of his hostility and threatening behavior, Dr. Rudisill asked DePew to leave and ended the session.
In addition to testimony regarding the counseling sessions, Officer Geisel, DePew and Thomas all testified regarding the visits that were scheduled to occur pursuant to the transitional order. The first of the originally scheduled visits was supposed to occur on October 31, 1998 at the home of Sherry Parrott, DePew's sister. On that date, Thomas contacted the Kettering Police Department to assist in delivering Staci for visitation. Both Thomas and Dr. Rudisill testified that Staci had been so upset prior to these scheduled visits that she became physically ill. There is some dispute between the parties as to what events occurred when Thomas and Staci arrived at Parrott's home.
First, the officer testified that he arrived at the home at approximately the same time as Thomas and Staci. He stated that Staci was inside the car crying with the doors locked, and Thomas was standing outside of the car. He does not remember Thomas doing or saying anything to encourage or discourage Staci to get out of the car for visitation with her father. However, he did testify that Thomas told him she had already asked Staci to get out of the car and Staci refused. The officer talked with Staci for a few minutes and then determined it was futile for anyone to make any further attempts to convince her to exit the vehicle. He advised DePew that, as a police officer, he could not physically remove her from the car, so he was going to have Thomas take Staci home.
Both DePew and Thomas testified that Thomas and Staci arrived at Parrott's home a few minutes before the officer. However, the remainder of their testimony diverges. DePew testified that Thomas exited the vehicle, approached him and told him it was his job to get Staci out of the car. He claims that Thomas did nothing to assist or encourage the visitation. DePew agreed the doors were locked, but did not see who locked them. At one point, he attempted to talk to Staci through the car window, but she would only say she would not get out of the car.
Finally, Thomas testified that she talked to Staci the night before, on the way to the visitation and once they arrived, encouraging her to visit with her father. She claims that she arrived at the residence, cracked her window and exited the vehicle, leaving the vehicle running. Immediately after she exited the vehicle, Staci locked the doors. Thomas stated that while at the residence, she asked Staci several times to get out of the car. Both Parrott and DePew also came down to the vehicle to encourage Staci to get out of the car. When everyone was unsuccessful, the officer advised her to take Staci home.
Further testimony was taken from the witnesses regarding the visitation that was scheduled to occur the following week. Apparently Thomas contacted the Kettering Police Department again and the same officer met her and Staci at UDF. The officer spoke with Thomas and Staci and concluded that Staci again would not get out of the car if taken to visit her father. Consequently, he advised Thomas to take Staci home. Thereafter, he drove to Parrott's home and told DePew that Staci would not be arriving for visitation that day.
Following the March 29 hearing, the magistrate filed his decision finding Thomas in contempt in regard to the October 31 visit and again establishing supervised visitation between DePew and Staci at Parrott's home. Despite objections filed by Thomas, the trial court adopted the magistrate's decision on September 29, 1999. Thomas timely appealed, raising the following assignments of error:
 The trial court erred as a matter of law in reviewing the magistrate's decision under the abuse of discretion standard.
 The trial court erred in its adoption of the magistrate's decision as it was against the manifest weight of the evidence and contrary to law.
 I
In her first assignment of error, Thomas alleges that the trial court used an improper standard in reviewing the magistrate's decision. We agree. Civ.R. 53(E)(4)(b) provides that after considering objections, "[t]he court may adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter." This rule does not specifically designate the standard of review a trial court should use when reviewing the magistrate's decision. However, it does suggest that the trial court should make an independent review of the record before rendering its judgment in the matter. Shannon v. Lutz (Dec. 11, 1998), Greene App. No. 98 CA 21, unreported, p. 5. In addressing a similar case where the trial court employed an abuse of discretion standard, we stated the following:
 The "abuse of discretion" standard that the trial court applied to review the decision of its magistrate is an appellate standard of review. It is applicable to the review performed by a superior court of the judgments and orders of inferior courts. Inherent in the abuse of discretion standard are presumptions of validity and correctness, which acknowledge the independence of the inferior courts by deferring to the particular discretion they exercise in rendering their decisions. Because its magistrate does not enjoy that independence, such presumptions are inappropriate to the trial court's review of a magistrate's decisions. Therefore, a trial court errs when it applies the abuse of discretion standard of review in ruling on Civ.R. 53(E)(3) objections to the decision of the appointed magistrates, as the trial court here did.
Rammel v. Rammel (May 9, 1997), Montgomery App. No. 15887, unreported, p. 3. In short, a trial court may not use an abuse of discretion standard when reviewing a magistrate's decision, but instead must conduct a de novo review. Dayton v. Whiting (1996),110 Ohio App.3d 115, 118.
The trial court stated in its decision, "Ms. Thomas has not provided sufficient legal basis that Magistrate Horne abused his wide discretion as the fact-finder in this case." The trial court cited two previous opinions from this court in support of its use of the abuse of discretion standard: Thompson v. Thompson (Dec. 19, 1997), Champaign App. No. 96-CA-23, unreported and Little v.King (Nov. 5, 1990), Greene App. Nos. 89-CA-85, 90-CA-39, unreported. However, in reviewing these cases, it is clear that this court applied the abuse of discretion standard in our review of the trial court decision. We did not at any point state that abuse of discretion is the proper standard for a trial court in reviewing a magistrate decision.
We find that the trial court erred in applying the abuse of discretion standard in reviewing the magistrate's decision in this case. Therefore, Thomas' first assignment of error is sustained.
 II.
Thomas further maintains that the trial court should not have adopted the magistrate's decision regarding her contempt as it was against the manifest weight of the evidence. In addressing this assignment of error, we must first determine the standards in reviewing a trial court's finding of civil contempt. Initially, an appellate court's standard of review of a trial court's contempt finding is abuse of discretion. State ex rel. Celebrezzev. Gibbs (1991), 60 Ohio St.3d 69, 75. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. Therefore, we must determine if the trial court's decision finding Thomas in contempt was unreasonable, arbitrary or unconscionable.
Next, we must address the trial court's standard in finding civil contempt. The purpose of civil contempt is to impose sanctions in order to coerce the individual to comply with a court order that was previously violated. Con-Tex, Inc. v. ConsolidatedTechnologies, Inc. (1988), 40 Ohio App.3d 94, 96. Such a finding of civil contempt in the trial court must be supported by clear and convincing evidence. Moraine v. Steiger Motors, Inc. (1996),111 Ohio App.3d 265, 268. Clear and convincing evidence implies that the trier of fact must have a firm conviction or belief that the facts alleged are true. Id.
To summarize the procedure, we must determine if the trial court's attitude was unreasonable, arbitrary or unconscionable in adopting the magistrate's decision finding Thomas in contempt. In making this determination, we need to ascertain whether the magistrate, and thus the trial court, had a firm conviction or belief that the facts supported a finding of contempt.
We must point out initially that the findings of fact and conclusions of law issued by the magistrate were extremely brief. There were conflicts in the testimony that were not expressly resolved by the magistrate in his decision. One key unresolved issue was to what extent, if any, Thomas encouraged or facilitated Staci's visitation with DePew on October 31, 1998. Thomas testified she talked with Staci the night before, on the way to the visitation and after they arrived, attempting to convince her to visit with her father. DePew testified Thomas made no attempts to facilitate Staci's visitation by encouraging her to get out of the car for the visit. The magistrate made no indication in his decision whose testimony he believed or what further action Thomas should have taken to facilitate the visitation.
The transitional order which precipitated this visit simply stated that Staci was to visit with the non-residential parent from 2:00 p.m. to 4:00 p.m. at the home of Sherry Parrott. It is undisputed that Thomas drove Staci to this residence at the appropriate time to make her available for visitation. The order did not specify any further action that was required of Thomas to facilitate the visitation. We completely support the magistrate and the trial court's holding that visitation is not the right of the child, and thus a child cannot simply refuse to attend visitation for no reason. However, the evidence demonstrated that Thomas did accomplish what was required of her in the transitional order by delivering Staci and making her available for the visitation. Consequently, we find that there was not clear and convincing evidence that she violated the court order, and thus the trial court abused its discretion by finding Thomas in contempt in this instance. As previously stated by this court, "the contempt power is about as useful as a sledgehammer for the purpose of repairing the relationship of the children with their estranged parent. Joint counseling would likely be a more effective tool." Thompson, supra, at p. 4.
Based on the foregoing, Thomas' second assignment of error is also sustained. Accordingly, the decision of the trial court isreversed and remanded for the court to issue a new visitation order which explicitly defines Thomas' duty in facilitating visitation. If the trial court wishes to place a greater burden on Thomas, then this burden must be stated with much greater clarity. See, Little v. King, supra at p. 5.
WOLFF, J., and FAIN, J., concur.